JOHN H. GILLIAT, Trustee, *v.* PAWTUCKET MUTUAL FIRE INSURANCE COMPANY.

A building, occupied as a dwelling house, one-fourth of a mile from any other dwelling, is described, in an application for insurance, as a dwelling house, and is insured as such, but, for more than a year prior to its destruction by fire, is, in fact, untenanted; *Held*, that such non-occupation was not a change in the condition and circumstances of the property within the meaning of a by-law of the insurance company, prescribing that "when the condition or circumstances of the property insured shall be, by the act of the assured, his agent or tenant, (in any wise) so changed as materially to increase the risk, the policy shall become void, and the premium be forfeited, unless the insured shall obtain the consent of the board of directors thereto, endorsed on the policy."

An applicant for insurance, to an interrogatory, "What are the facilities for extinguishing fires?" made answer in writing, "Force pump, and abundance of water;" *Held*, that herein was no promise or guarantee that the force pump should be kept, at all times thereafter and under all circumstances, in good order for use, it being sufficient that, at the date of the application or of the policy, the pump was in good order.

On the 4th of August, 1857, Gilliat procures a policy of insurance for six years, upon his dwelling house; in June, 1858, mortgages the estate to Duncan, the insurers then inserting in the body of the policy the words, "In case of loss, payable to A. Duncan," and on the 10th of November, 1860, conveys the estate in fee to said Duncan; in August, 1861, Duncan conveys the estate in fee to Bradley, assigning to him, by separate instrument, his interest in the said policy; and Bradley, on the 1st of August, 1862, conveyed the estate in fee to Greene, assigning to him, by separate instrument, his interest in the policy; *Held*, that the insurance company, though it received no notice whatever of said conveyances or assignments until August, 1862, by then endorsing their assent upon the said assignments, had precluded themselves from denying the right of said Greene, after the destruction of the property insured, to recover its value, in an action brought in the name of Gilliat, trustee; and this notwithstanding one by-law of the company was, "The interest of the insured in this policy, or in the property insured, is not assignable, unless by consent of the company, expressed in writing; and in case of any transfer, or termination of such interest of the insured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void."

MOTION for new trial of an action upon a policy of insurance against loss by fire, upon a house and barn in Ashford, Conn.

Gilliat, Trustee, *v.* Pawtucket Mutual Fire Insurance Co.

The policy bore date August 4th, 1857, and was for a term of six years. It was issued on the application of John H. Gilliat, then sole owner, who, in writing, answered the several interrogatories appended to the application, among which were the following :—

" 3. What buildings are there in the vicinity ? how near to the property to be insured ? of what are they constructed ? and how occupied ? *Answer.* No building for more than one-quarter of a mile. * * *

" 6. Are the stoves or other apparatus for heating or using fire properly secured, and will you engage to keep them so ? *Answer.* They shall be so kept.

" 7. Will you engage that the ashes and matches in and around your buildings shall be kept in a safe place ? *Answer.* I will. * * *

" 9. What are the facilities for extinguishing fire ? *Answer.* Force pump and abundance of water."

The insured, mortgaging his estate to Alexander Duncan, on the 21st of June, 1858, caused to be written on the face of the policy, with the assent of the defendant company, the words,— "In case of loss, payable to Alexander Duncan, Esq." Afterwards, on the 10th of November, 1860, he made an absolute conveyance of the estate to said Duncan, who, in August, 1861, conveyed it in fee to Charles S. Bradley, with an assignment in writing, under seal, in these words :—

" Having sold to Charles S. Bradley the house and farm in Ashford, formerly owned by John H. Gilliat, on which the Pawtucket Mutual Fire Insurance Company have a policy of insurance, on house and barn, amounting in all to six thousand dollars, as per their policy, No. 5,457, which said policy was made payable to me in case of loss, I now hereby set over and assign to said Charles S. Bradley all my right and title to same."

Said Bradley afterwards, on the first day of August, 1862, sold and conveyed said estate to one Moses Greene, and assigned to him by writing, under seal, similar in terms to that received from Duncan, all his interest in the said policy. Of these conveyances and transfers, it did not appear that the company, or

any of its officers or agents, ever received any notice until on or about the 1st of August, 1862, when upon each of the two said assignments of the policy, this entry was made by the then secretary of the company :—

"The directors consent.  Attest, ISAAC SHOVE, *Secretary.*"

On the 13th or 14th of April, 1863, Greene still the owner, the house was totally consumed.  The company denying its liability, action against it was instituted by said Greene, in the name of Gilliat, trustee to Greene, and the case was submitted to a jury.

Among the facts, proved or admitted, were, that, at the time of the fire, the force pump on the premises was found to be not in working order; and that the dwelling house was, and for a year or more had been, unoccupied, saving that, for a few days, some months previous to the fire, the owner and some of his friends used it as a hunting lodge, sleeping and eating there, when hay and rushes were brought from the barn, on which the hunters slept, and candles were used in the house, with bottles and turnips as candlesticks.  Neither of this temporary use of the premises, nor of the fact that the house was without a tenant, did it clearly appear in evidence that the company were ever informed.

Among the by-laws of the company, to which reference was made by counsel and Court, were these, viz. :—

"8.  *  *  *  And when the condition or circumstances of the property insured shall be, by the act of the assured, his agent or tenant, (in any wise) so changed as materially to increase the risk, the policy shall become void, and the premium be forfeited, unless the assured shall obtain the consent of the board of directors thereto, endorsed on the policy.  *  *  *

"11.  The interest of the insured in this policy, or in the property insured, is not assignable, unless by consent of this company, expressed in writing; and in case of any transfer, or termination of such interest of the insured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void.  *  *  *

"13.  A policy may be cancelled at any time, by either party, by giving notice thereof to the other party; and the premium

Gilliat, Trustee, *v.* Pawtucket Mutual Fire Insurance Co.

note shall thereupon be delivered up, in case no assessment shall be due thereon; and the insured shall be entitled to a return of an equitable portion of any previously paid premium.   *   *   *

"15.   No property shall be insured except upon an application in writing, in which the same must be distinctly valued and described.   The company assume the risk of fire on buildings insured by them, while undergoing necessary repairs, but not while alterations are making, unless they have notice thereof, and such premium be paid as the directors may require.   The mere change of tenants, when no change of occupation takes place, shall not affect a policy.   *   *   *

"19.   The company shall not be bound by the value of the property stated in the application or policy, unless otherwise agreed therein; and in case of loss, the company shall not be liable for more than three-quarters of the actual value thereof at the time of such loss."

The jury found a verdict for the plaintiff for the full amount claimed, and the defendant moved for a new trial, for the reasons following :—

*First.*   Because it appearing in evidence, upon the trial, that the policy of insurance which is the subject of this action was upon a dwelling house, which, at the time of the issuing of said policy, was occupied as a dwelling house by the assured, and that, subsequently, and for a year or more before the same was destroyed by fire, and at the time of the fire, the said dwelling house was unoccupied, the defendants offered evidence to show, and (the plaintiff objecting) the Court refused to allow the defendants to show, that no notice had, at any time before the fire, been given to the defendants that said dwelling house was unoccupied.

*Second.*   Because the defendants offered evidence to prove, and the Court, upon the plaintiff's objection thereto, refused to allow the defendants to prove the fact, that a dwelling house, situate in the country as the dwelling house in question was, remaining unoccupied for a period of a year or more, under article eighth of the by-laws of the company, was such a change

in the condition and circumstances of the property insured, by the act of the assured, as materially to increase the risk.

*Third.* Because the Court refused to charge the jury as requested, as to certain points.

*Fourth.* Because the verdict of the jury, in said cause, was against the law and against the evidence and the weight thereof, and should be set aside.

*Blodget, with whom was Eames, for the defendant :—*

I.    The plaintiff, upon the facts stated in the first exception, was bound to inform the defendants that the dwelling house insured was unoccupied.    The thirteenth article of the by-laws provides for the cancelling of a policy, at any time, by either party.    The plaintiff, if insured, was a member of the defendant corporation, and was bound to take notice of and observe its by-laws ; and, as a member, was under special obligation to maintain good faith in his dealings with the company.    When, therefore, the dwelling house became unoccupied, and continued unoccupied for more than a year before the fire, and was unoccupied at the time when the writing of August 1st, 1862, was obtained, good faith required him to give notice thereof, so that the defendants could have withheld their consent to the transfer, or have cancelled the policy under article thirteenth of the by-laws of the company.    *Stetson* v. *Massachusetts Mutual Fire Insurance Co.* 4 Mass. 330, 337 ; *Curry* v. *Commonwealth Insurance Co.* 10 Pick. 535, 538 ; *Gardiner et al.* v. *Piscataquis Mutual Fire Insurance Co.* 38 Me. 439.

II.    The court erred in refusing to allow the defendants to prove the fact, that a dwelling house situated as the dwelling house in question was, and remaining unoccupied for a year or more, was, under article eighth of the by-laws of the company, such a change in the condition and circumstances of the property insured, by the act of the assured, as materially to increase the risk.    The question of increase of risk, occasioned by the non-occupation of the dwelling house insured, as stated in the second exception, was not a question of law, but a question of fact, which ought to have been submitted to the jury.    The terms in which the by-law is expressed are broad enough to include any

change which, in any wise, would materially increase the risk. That such a change in the condition and circumstances of the insured property was within the meaning of the by-law is evident from that clause, in article fifteenth of the by-laws, which provides that "the mere change. of tenants, when no change of occupation takes place, shall not affect a policy." The provision in the last by-law, by implication, includes, under article eighth of the by-laws, any other change in the condition or circumstances of the property insured material to the risk. *Stetson* v. *Massachusetts. Mutual Fire Insurance Co.* 4 Mass. 330, 338; *Curry* v. *Commonwealth Insurance Co.* 10 Pick. 534, 538, 540, 542; *Jones Manufacturing Co.* v. *Manufacturers Mutual Fire Insurance Co.* 8 Cush. 82; *Merriam* v. *Middlesex Mutual Fire Insurance Co.* 21 Pick. 162; *Francis* v. *Somerville Mutual Insurance Co.* 1 Dutcher, 78; *Rice et al.* v. *Tower et al.* 1 Gray, 426, 430; 12 Wend. 507, 516; 16 Ib. 481, 489; *Grant* v. *Howard Insurance Co. of New York,* 5 Hill, 10; 1 Harris & Gill, 295; 3 W. & M. 529; *Shepard* v. *Union Mutual Fire Insurance Co.* 38 N. H. 232, 240; 17 Shepley, 274, 276; *Gammell* v. *Merchants and Farmers Fire Insurance Co.* 12 Cush. 167; 9 Barb. 191, 202.

III. The statement made in the application, in reference to the facilities for extinguishing fires, is a warranty by the assured co-extensive with the life of the policy; and if it was not true at the time of the fire, the policy was void. *Farmers Insurance and Loan Co.* v. *Snyden,* 16 Wend. 481; *Tibbetts* v. *Hamilton Mutual Insurance Co.* 3 Allen, 212; *Treadway* v. *Hamilton Mutual Insurance Co.* 29 Conn. 68; *Murdock* v. *Chenango Mutual Insurance Co.* 2 Comst. 210; *Balbrough* v. *Metropolis Insurance Co.* 5 Duer. 593; *Williams* v. *New England Mutual Fire Insurance Co.* 31 Me. 219, and cases cited; *Glendale Woolen Co.* v. *Protective Insurance Co.* 21 Conn. 19; *Jennings* v. *Chenango County Mutual Insurance Co.* 2 Denio. 75.

IV. The representations made by the assured, concerning the use and occupation of the property insured, the precautions taken to guard against fire, and the means of extinguishing fire, if not warranties, amount to a stipulation that such use and occupation shall *substantially continue* to be made, and such precautions and

means shall *substantially continue to be taken and exist* during the term of the insurance; and a discontinuance thereof by the assured, without the consent of the defendants, would render the policy void by virtue of the proviso therein, respecting a change in the condition or circumstances affecting the risk. *Stetson* v. *Massachusetts Mutual Fire Insurance Co.* 4 Mass. 330, 337; *Jones Manufacturing Co.* v. *Manufacturers Mutual Fire Insurance Co.* 8 Cush. 82; *Underhill* v. *Agawan Mutual Fire Insurance Co.* 6 Ib. 440; *Houghton et al.* v. *Manufacturers Mutual Fire Insurance Co.* 8 Met. 114; *Daniels et al.* v. *Hudson River Fire Insurance Co.* 12 Cush. 417; 2 W. & M. 489; 3 Ib. 529.

V. If the representation concerning the facilities for extinguishing fires was neither a warranty, or a stipulation to be substantially complied with co-extensive with the life of the policy, then, under article eighth of the by-laws, the question whether the condition of the force pump at the time of the fire was such a change in the condition or circumstances of the property insured, by the act of the assured, as would materially increase the risk, ought to have been submitted to the jury without reference to whether or not the then condition of the pump was occasioned by the *fraud* or *willful neglect* of the assured. The only question for the jury, under this by-law, was, whether the condition of the force pump was such a change, by the act of the assured, his agent or tenant, in the condition or circumstances of the property insured, as materially to increase the risk. *Clark et al.* v. *Manufacturers Insurance Co.* 2 W. & M. 489.

VI. The policy became void by the alienation of the insured property by Gilliat, the original assured, to Duncan; and it did not become a valid subsisting contract of insurance, on the part of the defendants, with Greene, by the consent, in writing, endorsed on the policy and signed by the defendants' secretary. By-laws, art. 11. 1. Consent in writing was not given to the first transfer from Mr. Gilliat to Mr. Duncan, and the consent given to the subsequent transfer cannot avail to revive a void policy. 2. If the papers, signed by the defendants' secretary, can be construed to be the consent, in writing, to the transfer of the insured property from Mr. Gilliat to Mr. Duncan, the interest of Mr.

Duncan in the policy was only as the appointee of Mr. Gilliat to receive the money in case of loss; and the transfer by Mr. Duncan of his interest in the policy to Mr. Bradley, and that of Mr. Bradley to Mr. Greene, merely placed Mr. Greene in the place of Mr. Duncan, to receive the money in case the defendants were liable to Mr. Gilliat. The defendants were not liable to Mr. Gilliat, because he had parted with his interest in the insured property before the fire, and consequently neither Mr. Duncan or any one standing in his place could recover of the defendants. The contract of insurance was never assigned by Mr. Gilliat to Mr. Duncan. The words, "in case of loss payable to Alexander Duncan," inserted in the policy, merely made Mr. Duncan the appointee of Mr. Gilliat to receive the money in case Mr. Gilliat sustained a loss. By the transfer to Mr. Bradley and from Mr. Bradley to Mr. Greene, the latter stood in the place of Mr. Duncan. The eleventh article of the by-laws requires the consent of the defendants, in writing, to any transfer, either of the property insured or of the policy of insurance, and it was to the transfer of the interest of Mr. Duncan in the policy, as the appointee of Mr. Gilliat to receive the money, in case of loss to Mr. Gilliat, and to such transfer only, that the defendants consented, in writing, on the first of August, 1862. And such is the construction which the plaintiff's counsel has placed on this transaction. The property is averred to be the property of Gilliat at the time the policy issued, and at the time of the fire. The averments are, that Gilliat has made proof of loss, and that he is entitled to recover the amount of the insurance. The entire declaration, except that Gilliat is named as trustee to Greene, is the same as if Gilliat had not assigned his interest in the property insured. *Loring* v. *Manufacturers Mutual Insurance Co.* 8 Gray, 28; *Fogg et al.* v. *Middlesex Mutual Insurance Co.* 10 Cush. 337; *Grosvenor* v. *Atlantic Insurance Co.* 17 N. Y. (3 Smith), 391; *Hale* v. *Mechanics Mutual Fire Insurance Co.* 6 Gray, 169, 172; *Hoxsie* v. *Providence Mutual Insurance Co.* 6 R. I. 517. 3. The consent given by the secretary of the company, nearly two years after the policy had become void, to the transfer of the policy and the property insured, was not binding on the company.

The by-laws make no provision and give no authority to the secretary to revive a policy, after it has been void for nearly two years. *Gardiner et al.* v. *Piscataquis Mutual Fire Insurance Co.* 38 Me. 439, and cases cited; *Fogg et al.* v. *Middlesex Mutual Fire Insurance Co.* 10 Cush. 337, 347. 4. The secretary of the company had no authority to consent to the alienation of the property insured, and to the transfer of the policy, and thereby revive a void policy without taking a new premium note.

VII. The verdict of the jury was clearly against the evidence. 1. The verdict, under the instructions of the court to the jury, with respect to the hay and other combustible materials not ordinarily kept in a dwelling house, was clearly against the evidence. *Francis* v. *Somerville Mutual Fire Insurance Co.* 1 Dutcher, 78. 2. The verdict was also clearly against the evidence upon the question of damages, under the by-law of the company, which limits the recovery to three-fourths of the actual value of the property at the time of the fire.

*Currey, for the plaintiff:—*

I. The writing on the face of the policy, "In case of loss payable to Alexander Duncan," made by and with the concurrence of the insurance company, was, in legal effect, an assignment of the policy. *Brown* v. *Roger Williams Insurance Co.* 5 R. I. 394; *Same* v. *Hartford Insurance Co.* Ib. This gave to Duncan the legal capacity, with the assent of the company, to assign the policy to Bradley, and the assignment to Bradley gave him the legal capacity to assign the policy to Greene. Greene being the equitable owner of the policy, might make the proofs of loss in his own name, but sue in the name of the insured. *Cornell* v. *LeRoy et al.* 9 Wend. 163.

II. The written consent of the company, as endorsed on the policy, to its assignment by Duncan to Bradley, and by Bradley to Greene, containing recitals of the alienation of the property, from Duncan to Bradley and from Bradley to Greene, was a waiver, on the part of the company, of any defect of notice of alienation, and estops the defendants from pleading a want of notice. *Frost* v. *Saratoga Mutual Insurance Co.* 5 Denio. 154; *Insurance Co.* v. *Stockbower*, 26 Penn. St. R. 199; *Tuttle* v.

*Robinson,* 33 N. H. 104; *Kenan* v. *Missouri Mutual State Insurance Co.* 12 Iowa, 126; *Ryder* v. *Same,* Ib.; *Hale* v. *Union Mutual Fire Insurance Co.* 32 N. H. 295.

III.   The description of a building insured as a dwelling house, though it might imply occupation as such at the time, is not a stipulation that it shall continue to be occupied, and the insured may recover, though it had been vacated before, and remained vacant at the time of the fire.   *O'Neil* v. *Buffalo Insurance Co.* 3 Comst. (N. Y.) 122; *Soye* v. *Merchants Insurance Co.* 6 La. An. R. 761; *Joyce* v. *Maine Insurance Co.* 45 Maine, 168; *Hawkes* v. *Dodge County Mutual Insurance Co.* 11 Wis. 188.

IV.   The non-occupation of a dwelling house, situated in the country, for a year or more, is not the change in the condition and circumstances of the property implied by by-law eighth. That article imports change in the condition and circumstances of the property itself.   It has no reference to its use merely as occupied or not occupied.   The Court, however, allowed evidence to go to the jury, as to whether the manner in which the house was left unoccupied, and the occasional uses to which it was put, materially increased the risk, and left it to the jury to determine the effect of that evidence as regarded a material increase of the risk, and to find for the defendants if satisfied that the risk was materially increased.

V.   The representation that there was a force pump on the premises, at the time of issuing the policy, was a stipulation that such was *then* the fact,—not a warranty that it should be continued as an essential condition of the policy.   It was an answer to a question of fact, requiring no stipulation.   9th Interrogatory.   So the 3d Interrogatory.   Interrogatories 6th and 7th require both answers of fact and continuing warranties.   *Peoria Mutual Fire Insurance Co.* v. *Lewis et al.* 18 Ill. 553; *Stebbins* v. *Globe Insurance Co.* 2 Hall, 632; *O'Neil* v. *Buffalo Insurance Co.* 3 Comst. 125; 8 Met. 114; 8 Cush. 82; 21 Conn. 19.

VI.   Where, as in this case, there has been two concurring verdicts for the plaintiff, upon full trials and for the same amount of damages, the Court will not set aside the verdict as against the evidence or the weight of evidence, unless they can clearly

see some manifest and palpable error, or the stronger prepon-
derance of evidence against the verdict. *Johnson* v. *Blanchard*,
5 R. I. 24; *Wait* v. *McNeil*, 7 Mass. 261; *Curtis* v. *Jackson*, 13
Ib. 507; *Hammond* v. *Wadhams*, 5 Ib. 353; *Coffin* v. *Phenix In-
surance Co.* 15 Pick. 291; *Cunningham* v. *Magoon*, 18 Ib. 13;
*Baker* v. *Briggs*, 8 Ib. 122–6.

BRAYTON, J. The ground for new trial, first assigned, is,
that the dwelling house, insured as such and occupied as a
dwelling at the time of insurance, had, for a long time before the
fire, been entirely unoccupied. The defendants were not per-
mitted to prove that the assured had given them no notice of
that fact; and the defendants say that such neglect to give such
notice was a breach of good faith on the part of the assured,
which rendered the policy void,—that it was the concealment
of a fact material to the risk.

It may be said that good faith forbids either party, by con-
cealing what he probably knows, to draw the other into a bar-
gain from his ignorance of that fact and his believing the con-
trary. The rule applies to the inception of contracts in all cases,
and if the question were now, whether the policy was originally
void, on the ground that a material fact had been concealed, the
objection here might require more consideration. There is no
pretence, however, that anything was concealed at the time of
the application, or of the making of the policy. What is claimed
here is, that the policy, originally valid, has become void by the
fact, that the dwelling house has since been unoccupied, and that
this fact was not made known to the insurer. The fact of non-
occupation would avoid the policy equally, with or without
notice, unless, upon such notice, the forfeiture was, by the in-
surer, waived; and it would be for the plaintiff to prove the
waiver, and so to prove notice. The question, therefore, is not
so much as to the notice as it is as to the effect of non-occupation.

The point is also made by the defendants, and they say, that
the fact that the dwelling was not occupied by any person, for a
long period, avoided the policy, and this by virtue of the eighth
article of the by-laws of the company, which provides, that " when
the condition or circumstances of the property insured shall be,

by the act of the assured, his agent or tenant, (in any wise) so changed as materially to increase the risk, the policy shall become void."

The original application asked for insurance upon the applicant's dwelling house. This was the kind of property proposed to be insured. The policy would not cover a building of any other description,—a barn, store-house, workshop, mill or the like,—and were the dwelling house converted into either of these, the policy would become void. It must continue to answer that description of a dwelling house. It is not necessary to the description that it should, at the time, have a te~ that, at all times thereafter, it should have one. But it must not be usually occupied in any other mode. Had the house been unoccupied at the time of the policy, it is agreed that the policy would still be valid. Article fifteenth of the by-laws provides that " the mere change of tenant, when no change of occupation takes place, shall not affect a policy." This clause is referred to in the argument, to show that the non-occupation is such a change in the condition and circumstances of the property as is contemplated in the eighth by-law. The language does not seem to imply that. On the contrary, it implies that it is not every change of circumstances, though it may increase the risk, that is to be so regarded,—as a change from a cautious, careful tenant, to a negligent and careless one. It implies also that it is not every change affecting the occupation of the premises,—not a mere cessation of occupation,—but a change of occupancy, which can only be by an actual occupancy for another purpose.

In the application for insurance, this question was put by the company : " What are the facilities for extinguishing fires ? " The answer of the applicant was : " A force pump and an abundance of water."

The policy recites, that Gilliat has made application for insurance, &c., upon " the property described in application No. 5,457, which forms a part of this policy warranty by the assured, reference being had thereto for description and for all other matters contained therein," to wit: [here specifying the buildings

insured.] It is claimed that the answer, "A force pump and an abundance of water," was a warranty, by the assured, that the pump should, at all times during the policy, be in good working order; and if not so at the time of the fire, the policy became void and the plaintiff has no right to recover. Treating this as a warranty, it must be strictly performed; and if it be held as a warranty, that the pump should, at all times thereafter, be in good order, a failure so to keep it, from whatever cause the failure might happen, would avoid the policy and prevent a recovery for any loss.

While the warrantor is held to this strict performance on his part of the thing stipulated to be performed, yet because it might work hardship where there was entire good faith and an honest purpose fully to perform, the warranty also must be strictly construed; and his engagement is not to be extended, by construction, to include what is not necessarily implied in the terms used. The question here is, what are (in the present) the facilities for extinguishing fire? The answer truly states what they then were. Nothing is asked as to the future, at least, expressly.

The company had put other questions as to other subjects. The sixth question is: "Are the stoves or other apparatus for heating, or using fire, properly secured?" That is, what is the present security against fire? But the question does not stop here. The company desire an engagement as to the future security, and they ask further, "will you engage to keep them so?"

The seventh interrogatory, which is upon the subject of ashes and matches, does not ask at all of the present, but seeks a stipulation for the future, and asks, "Will you engage that the ashes and matches, in and around your building, shall be kept in a safe place?" In these, the company insist on a promise for the future. It shows that when they wish information as to the present, they ask it; and when they require a promise for the future, they put the question to insure under it, and that they understood that a question as to the present was not to be asked as one directed to the future. To construe the answer, relied on by the defendants, to be a warranty to keep the pump in the

Gilliat, Trustee, *v.* Pawtucket Mutual Fire Insurance Co.

same good order in the future, is to extend it to a subject not in the contemplation of the parties.

Gilliat, the original insured, conveyed the property insured to Alexander Duncan, on the 10th of November, 1860, and it is claimed that the policy became, from thenceforth, void. The effect of this alienation would have been what the defendants claim, had there been no provision in the by-laws of the company upon the subject; and but for this provision, no other person than the original assured could recover upon the policy after such alienation. The by-law (art. 11) is, "The interest of the insured in this policy, or in the property insured, is not assignable, unless by consent of the company, expressed in writing; and in case of any transfer or termination of such interest of the insured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void." This article, by implication, continues the policy in full force, upon the condition therein imposed, viz., that notice of the alienation shall be given to the company, and that the assent of the company shall be given in writing. The policy in force after this assent is no other than the original policy made to Gilliat, and the premium note is the consideration for it. The lien, whatever it was before alienation, still continues upon the property insured. Because it is not a policy newly made to the assignee, for whose benefit the assent is obtained, it is necessary to bring suit in the name of the assignor.

Now it is said, that the directors of the company never gave their assent to the conveyance of this property from Gilliat to Duncan, though they did express their consent, in writing, to the subsequent conveyances from Duncan to Bradley, and from Bradley to Greene, for whose benefit this suit is brought. The assent of the directors was given August 1st, 1862. Two papers were then presented to the directors,—one dated August 1st, 1862, reciting that Duncan had conveyed to Bradley the house and farm formerly owned by John H. Gilliat; the other, dated August 1st, 1863, reciting that Bradley had sold the same premises to Greene. On these the directors endorsed their assent in writing. Since it is not stated in terms that Gilliat had con-

Gilliat, Trustee, *v.* Pawtucket Mutual Fire Insurance Co.

veyed to Duncan, it is claimed that no notice was given of that transfer, and so no assent to that was ever given.

Upon applying to them for their assent, under the by-law, the applicant had but one purpose : that was to procure the assent of the company to the conveyance to him, and to issue a living policy for his benefit, upon the property so conveyed. That purpose could not be unknown to the directors. If he had not the title of Gilliat, his application was useless, and the assent worthless. The directors were now informed that the estate of Gilliat had passed to Greene, and they consent that the policy shall be good, notwithstanding. It is hardly conceivable that they could have understood that the estate was in Greene, and yet had never passed from Gilliat ; and if they did not, they, in effect, consented to all the transfers from Gilliat to Greene. They at least waived any forfeiture for want of prior notice of the first conveyance, and agreed that it was then a subsisting policy. The cases cited show that want of notice may be waived by acts less stringent. *Frost* v. *Saratoga Mutual Insurance Co.* 5 Denio. 154; *Hale* v. *Union Mutual Fire Insurance Co.* 32 N. H. 295.

There is no time limited in the by-laws within which the notice shall be given, or beyond which the assent shall not be given. It is to be presumed that the notice will be prompt and within a reasonable time for their assent. When notice given shall be deemed by the directors unreasonable, they can refuse compliance and withhold their consent. But it is too late to object to the notice after the consent is actually given. It is a waiver of all objection as to time.

It is made a point of defence to this action, that the policy has not been assigned. A policy of insurance is not, by law, assignable, so as to enable an assignee to sue in his own name. The legal interest remains in the original assured, notwithstanding the assignment. He is the party to the policy. It is only the equitable interest which the assignee acquires; but this interest will be nevertheless protected.

The assignment, all that the law allows, from Gilliat to Duncan, was effected by the insertion, in the policy itself, of the clause making the loss payable to Duncan. *Brown* v. *Hartford Insu-*

*rance Co.* 5 R. I. 394. From Duncan to Bradley, and from Bradley to Greene, the policy is expressly assigned, and expressly assented to by the directors.

Though we think the value of the property destroyed, as found by the jury, is large, and goes to the full extent of the evidence, as it impresses us, we do not see sufficient reason to disturb the verdict. The jury could not fail to notice that the directors, by the policy, insured the sum of $4,750 on the building, being prohibited from insuring more than three-fourths of the value.

We could hardly set aside a verdict because the jury, upon all the evidence, came to the conclusion, that the directors were nearly right in their estimate of the value.

*New trial denied.*